UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Susan Harrison,<br><br>    Plaintiff,<br><br>— against —<br><br>United States of America,<br><br>    Defendant. | 17-cv-5049 (ARR) (VMS)<br><br>**Not for print or electronic publication**<br><br>**Opinion & Order** |

ROSS, United States District Judge:

  Plaintiff Susan Harrison is suing the United States, alleging that an employee of the United States Postal Service pushed a mail cart into her leg. She claims that this court has jurisdiction pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346 (2018), and that her claim arises under § 2674 (providing for the liability of the United States) and § 2679 (providing for the exclusiveness of the Federal Tort Claims Act remedy). *See* Am. Compl. ¶¶ 13, 15–21, ECF No. 2. The government has moved for summary judgment, and the plaintiff opposes. For the reasons set forth below, the government's motion for summary judgment is denied.

## BACKGROUND

  On December 10, 2016, the plaintiff, Susan Harrison, was leaving her home on her way to her tutoring job when she saw a mail carrier approaching. *See* Harrison Dep. Def.'s Ex. D 53:8–19, ECF No. 26 ("Def.'s Ex. D"). According to Harrison, she stopped and stood in front of the building next door to wait for her mail. *See id.* at 53:14–20; Def.'s Rule 56.1 Statement ¶ 3, ECF No. 25; Pl.'s Resp. to Def.'s Rule 56.1 Statement ¶ 3, ECF No. 29. The mail carrier—whom the plaintiff later learned was Neville Lynch—"pushed the cart directly into" her right knee, causing

her knee to buckle. Def.'s Ex. D 53:21–24, 77:13, 77:17, 92:12–13; Harrison Dep. Pl.'s Ex. C 30:18–21, ECF No. 30-1 ("Pl.'s Ex. C"); Def.'s Rule 56.1 Statement ¶ 6; Pl.'s Resp. to Def.'s Rule 56.1 Statement ¶ 6. The plaintiff almost fell but ultimately did not fall to the ground. Def.'s Ex. D 98:7–16. The next day, the plaintiff's knee was swollen, and she sought emergency room treatment. Def.'s Ex. D 78:20–24. Emergency room personnel took x-rays of her knee and gave her a cane. *Id.* at 81:4–13, 82:3–6. She also scheduled an MRI. *Id.* at 82:7–9. Later, in June of an unspecified year, she underwent knee replacement surgery. *Id.* at 106:10–17; Def.'s Rule 56.1 Statement ¶ 17; Pl.'s Resp. to Def.'s Rule 56.1 Statement ¶ 17.

The plaintiff has characterized the manner in which Lynch struck her in various ways. A few days after the hit, the plaintiff filed a complaint with the post office, writing that "mailman Lynch deliberately pushed his mail cart into my right knee." Letter to Post Office, Def.'s Ex. C, ECF No. 26 ("Def.'s Ex. C"); Def.'s Ex. D 79:13–18. When asked to explain her phrasing in this complaint, the plaintiff testified that "he deliberately went into my knee, and there was no apology behind it, so I didn't understand." Def.'s Ex. D 80:7–14. She proceeded to testify that "[d]eliberate usually means that it was intentional, from my vocabulary. If we do something, we say sorry or something." *Id.* at 80:16–18. When asked whether Lynch's actions were intentional, she testified "I don't know. It felt intentional. It created an accident on my behalf. I ended up having an accident and it felt deliberate." *Id.* at 80:20–23. She went on to testify that "it wasn't just pushed, it was shoved – it was fast speed. . . . That's why I felt it was deliberate, a deliberate accident, if you will." *Id.* at 92:16–20. She likened Lynch's actions to "push[ing] a child down the steps or something to harm anyone[,]" *id.* at 120:4–5, and testified that "he should have been arrested" because "[y]ou can't go around injuring people[,]" *id.* at 120:9–14. She also testified that her "knee was assaulted." *Id.* at 121:3. On the "Standard Form 95" that she filed with the United States Postal

Service in connection with this case, the plaintiff wrote that Lynch "pushed a mailcart into [her] right leg and right knee." SF-95 Def.'s Ex. A, ECF No. 26.

In an affidavit that she prepared in response to the instant motion, the plaintiff "inform[ed] and clarif[ied] . . . the meaning of [her] use of words such as 'deliberate,' 'deliberately,' and/or 'intentional'" at her deposition and in her written complaint to the post office. Harrison Aff. Pl.'s Ex. D ¶ 3, ECF No. 30-1. She explained that she meant these words only as an "expression of [her] emotional state of mind" and that she "did not intend to use those words in [their] strict legal definition . . . ." *Id.* She further wrote that "as [she] testified before, [she] still do[es] not know what Mr. Neville Lynch's intentions were" because she "did not have any prior altercations" or "conflicts" with him. *Id.* at ¶ 4.

Lynch offers a different characterization of his actions. The plaintiff testified that when Lynch hit her with his cart and she told him "[y]ou pushed the cart into me," Lynch responded "[y]ou ran into my cart." Def.'s Ex. D 54:2–4, 75:21–23, 76:13–14, 77:12–15. Lynch testified that as he approached the plaintiff's home on the day in question, he found her "standing in the entrance," and he asked her, "[c]ould you excuse me?" Lynch Dep. Pl.'s Ex. E 50:20–22, 56:5–6, ECF No. 30-1. He testified that the plaintiff responded "[w]hy do I have to move, you are just trying to be difficult" and "you could put the cart anywhere." *Id.* at 50:23–25, 63:23–24. He described his tone as "not rude, just trying to be polite." *Id.* at 56:9–10. According to Lynch, the plaintiff moved out of his way "enough for [him] to [move] the cart." *Id.* at 56:20–23. Lynch further testified that the cart "didn't touch her." *Id.* at 56:23, 63:6–12, 70:3–5. He agreed with the plaintiff that he had no prior conflicts with her, *see id.* at 62:14–63:5, but testified that the plaintiff seemed "a little angry" on the day in question, *id.* at 63:16–17, 68:15–18.

The plaintiff sued the government pursuant to the Federal Tort Claims Act ("FTCA"), as

3

well as 28 U.S.C. §§ 2674 and 2679, alleging that Lynch acted negligently when he pushed his mail cart into her knee. Am. Compl. ¶¶ 13, 15–21, 25–26, ECF No. 2; *see also id.* at ¶¶ 30–31 (alleging that government was negligent, careless, and reckless in allowing Lynch to push cart into plaintiff).

The government argues that the plaintiff's subsequent characterization of Lynch's actions as deliberate forecloses the possibility of relief under the FTCA. According to the government, the plaintiff "unequivocally" testified that Lynch acted intentionally when he hit her with his mail cart. Def.'s Mem. of Law in Supp. of Mot. for Summ. J. 7, ECF No. 27 ("Def.'s Br."). The government argues that because the plaintiff's descriptions of Lynch's actions establish that he committed an intentional, rather than negligent, tort, the government cannot be liable because the United States has not waived its sovereign immunity with respect to intentional torts. *See id.* at 5, 7. Accordingly, the government moves for summary judgment.

**DISCUSSION**

Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court is not to resolve disputed issues, but to determine whether there is a genuine issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). "While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)) (internal quotation marks and ellipses omitted).

4

In assessing whether summary judgment is appropriate, the court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011) (quoting *In re Bennett Funding Grp., Inc.*, 336 F.3d 94, 99 (2d Cir. 2003)); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party carries the burden of proving that there is no genuine dispute respecting any material fact and "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223–24 (2d Cir. 1994). Once this burden is met, in order to avoid the entry of summary judgment, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998) (citing *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525–26 (2d Cir.1994)). In reviewing the record before it, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997).

### The FTCA

The United States enjoys sovereign immunity from suit except where it waives such immunity. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983); *Rodriguez v. Velez-Pagan*, 341 F. Supp. 3d 203, 207 (E.D.N.Y. 2018) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). The FTCA waives the sovereign immunity of the United States for certain civil suits

> against the United States, for money damages . . . for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable . . . in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). However, "[t]his broad waiver of sovereign immunity is subject to a number of exceptions set forth in § 2680." *Millbrook v. United States*, 569 U.S. 50, 52 (2013). In particular, § 2680(h) preserves sovereign immunity for "[a]ny claim arising out of assault, battery," or one of several other intentional torts. 28 U.S.C. § 2680(h); *see also Rodriguez*, 341 F. Supp. 3d at 209 (citing *United States v. Shearer*, 473 U.S. 52, 55 (1985) (plurality opinion)) ("Section 2680(h) of the FTCA forecloses any claims arising out of intentional torts . . . ."). In determining whether § 2680(h) applies—and the United States has thus preserved its sovereign immunity, foreclosing suit against it because the claim arises out of an intentional tort—"a court must look, not to the theory upon which the plaintiff[s] elect[ ] to proceed, but rather to the substance of the claim." *Rodriguez*, 341 F. Supp. 3d at 209 (quoting *Dorking Genetics v. United States*, 76 F.3d 1261, 1265 (2d Cir. 1996)); *see also Simone v. United States*, No. 09–CV–3904 PKC, 2015 WL 419691, at *24 (E.D.N.Y. Jan. 30, 2015) ("In determining whether a claim is barred under § 2680(h), courts look to the gravamen of the claim, and not to a plaintiff's theory of liability or characterization of the claim."), *aff'd*, 642 F. App'x 73 (2d Cir. 2016) (summary order).

Thus, in this case, if the plaintiff's claim, in substance, arises out of an intentional tort, then § 2680(h) forecloses suit. However, if the plaintiff's claim arises out of negligence, then § 2680(h) does not foreclose suit, and the government may be liable. In moving for summary judgment, the government argues that it is undisputed that Lynch acted intentionally.

<u>Application</u>

Here, I find a genuine dispute of fact as to whether or not Lynch acted intentionally when he hit the plaintiff with his mail cart (that is, if he did hit her with his mail cart at all). First, to the extent that the plaintiff can possibly know whether or not Lynch acted intentionally, she raised a dispute of fact within her own deposition testimony. Contrary to the government's interpretation

6

of the plaintiff's testimony as "unequivocal[]," *see* Def.'s Br. 7, the plaintiff equivocated between describing Lynch's actions as "deliberate[]" or "intentional," describing the incident as "an accident," and stating "I don't know" when asked whether Lynch acted intentionally, Def.'s Ex. D 80:12–23. She then called the incident a "deliberate accident"—an inherently contradictory and ambiguous characterization. *Id.* at 92:19. Further, any part of the plaintiff's testimony that characterizes the incident as accidental or professes a lack of knowledge as to whether Lynch acted deliberately contradicts the written complaint that the plaintiff submitted to the post office, where she stated that Lynch acted "deliberately." Def.'s Ex. C.

Second, the plaintiff's affidavit submitted in opposition to summary judgment clarifies that in testifying that Lynch acted deliberately or intentionally, the plaintiff meant to express only her emotional reaction to the incident and not to establish that Lynch acted intentionally as defined in the governing tort law. *See* Harrison Aff. ¶ 3. In fact, the plaintiff's affidavit further clarifies that she does not know what Lynch intended. *Id.* ¶ 4. Accordingly, the evidence leaves open an issue of fact as to whether Lynch acted intentionally or negligently.

The government correctly asserts that a plaintiff cannot create an issue of fact on summary judgment by submitting an affidavit that contradicts earlier deposition testimony. Def.'s Reply Mem. of Law in Further Supp. of Mot. for Summ. J. 5, ECF No. 32 ("Def.'s Reply"); *see, e.g.*, *Mack v. United States*, 814 F.2d 120, 124–25 (2d Cir. 1987) (citing, *inter alia*, *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment."). However, this "principle does not apply if the deposition and the later sworn statement are not actually contradictory." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000). "Thus, it does not apply where the later sworn assertion addresses an

issue that was not, or was not thoroughly or clearly, explored in the deposition . . . ." *Id.*; *see also LeBlanc v. United Parcel Serv.*, No. 11 Civ. 6983(KPF), 2014 WL 1407706, at *9 (S.D.N.Y. Apr. 11, 2014) (quoting *Giliani v. GNOC Corp.*, No. 04-CV-2935 (ILG), 2006 WL 1120602, at *3 (E.D.N.Y. Apr. 26, 2006)) ("Some courts have suggested, however, that this principle will not bar an affidavit when 'an issue was not fully explored in the deposition, or the deponent[']s responses were ambiguous.'"). Here, the plaintiff's deposition testimony is not clear in its exploration of Lynch's intent, and she submitted her affidavit to clarify rather than to contradict herself. Additionally, "where a party's conflicting affidavit statements are corroborated by other evidence, the affidavit may be admissible, since the concern that the affidavit is a 'sham' is alleviated." *Giliani*, 2006 WL 1120602, at *3 (quoting *Palazzo*, 232 F.3d at 43–44). In this case, the plaintiff's deposition testimony itself corroborates her affidavit, as her equivocation about Lynch's intent at the deposition aligns with the expression in her affidavit that she does not know what Lynch intended. Thus, the affidavit is admissible and further reveals an issue of fact as to whether Lynch acted intentionally or negligently.

This issue of fact is material, as its resolution affects the outcome under the FTCA. If Lynch committed an intentional tort, then the government cannot be liable because it enjoys sovereign immunity. *See* § 2680(h). But if Lynch acted negligently, then the government may be liable.

The cases that the government cited in support of its argument are inapposite. For example, in *Haber*, § 2680(h) barred suit because the plaintiff claimed that a postal worker "used her vehicle as a weapon" to injure her—a tortious act that was "clearly an assault and/or battery under New York law . . . ." *Haber v. United States*, No. 10–CV–5443 (SJF)(ARL), 2012 WL 92499, at *1, *4 (E.D.N.Y. Jan. 10, 2012); *see also Lambertson v. United States*, 528 F.2d 441, 443 n.4, 444–45 (2d Cir. 1976) (affirming dismissal pursuant to § 2680(h) when government employee clearly

acted intentionally, even though complaint alleged negligence); *Schmerder v. Veterans Admin.*, No. 89–CV–1453, 1991 WL 15531, at *3 (N.D.N.Y. Feb. 5, 1991) (granting summary judgment for government when tortfeasor indisputably intended to strike plaintiff and "was not merely negligent"). Here, Lynch did not commit a clear assault or battery; rather, the evidence shows that he might have acted intentionally or he might have acted accidentally.

The government also cited several distinguishable cases involving negligent hiring, supervision, or failure to prevent harm. For example, in *Stoyanov*, a court in this district found that § 2680(h) barred a plaintiff's claim against the United States for negligent hiring, supervision, training, retention, and failure to terminate when a mail carrier assaulted him. *See Stoyanov v. United States*, 1:16-CV-4215 (PKC)(ST), 2018 WL 623207, at *1, *3 (E.D.N.Y. Jan. 25, 2018); *see also* 2018 WL 8061070 (adopting Magistrate Judge's Report & Recommendation in its entirety). The court explained that "plaintiffs may not bring negligence claims based on the federal government's duty to prevent the foreseeable assaults of employees acting in their scope of employment." *Stoyanov*, 2018 WL 623207, at *3 (citing *Guccione v. United States*, 878 F.2d 32, 33 (2d Cir. 1989)). Here, while the plaintiff does include allegations in her complaint that the United States was negligent "in allowing the mailcart to be pushed into [her]," Am. Compl. ¶ 30, she also alleges—and the evidence could support—that Lynch himself acted negligently, *see id.* ¶ 26, distinguishing this case from *Stoyanov*, *see also Shearer*, 473 U.S. at 55 (interpreting, in plurality opinion, § 2680(h) to bar claims of negligent failure to prevent assault and battery by government employee); *Miele ex rel. Miele v. United States*, 800 F.2d 50, 51–52 (2d Cir. 1986) (affirming dismissal of FTCA suit claiming negligent failure to supervise and warn when Army soldier committed battery); *Johnson ex rel. Johnson v. United States*, 788 F.2d 845, 850 (2d Cir. 1986) ("We agree with [the *Shearer* plurality] that the plain language of § 2680(h) prohibits

claimants from clothing assault and battery actions in the garb of negligence by claiming negligent failure to prevent the attack."); *Simone*, 2015 WL 419691, at *24 (dismissing FTCA claim for negligent failure to prevent false arrest and malicious prosecution as barred by § 2680(h)); *Bowman v. U.S. Postal Serv.*, No. 02 Civ. 6138(SHS), 2003 WL 1395821, at *3 (S.D.N.Y. Mar. 20, 2003) (dismissing negligent supervision claim for lack of subject matter jurisdiction when underlying tort was intentional).

Finally, the government is incorrect in its assertion that under New York law, "so long as any physical conduct [sic] occurred, 'the plaintiff's cause of action is one of intentional tort rather than negligence' . . . ." Def.'s Reply 3–4 (quoting *Voccia v. United States*, 12-CV-05909(KAM)(SMG), 2017 WL 1194652, at *8 (E.D.N.Y. Mar. 31, 2017)). In fact, *Voccia* concluded that "'once *intentional* offensive contact has been established,' the plaintiff's cause of action is one of intentional tort rather than negligence." 2017 WL 1194652, at *8 (emphasis added) (quoting *Sawyer v. Wight*, 196 F. Supp. 2d 220, 228 (E.D.N.Y. 2002) and *Oteri v. Vill. of Pelham*, 954 N.Y.S.2d 171, 172 (N.Y. App. Div. 2012)). *Voccia* therefore does not foreclose the possibility of a successful negligence claim under New York law when physical contact occurred; indeed, courts in this district and in the Southern District of New York have found such claims cognizable. *See Petschauer v. United States*, No. 13-CV-6335 (NGG) (VMS), 2016 WL 1271035, at *1, *5 (E.D.N.Y. Mar. 29, 2016) (analyzing negligence claim under New York law when postal worker allegedly hit plaintiff with truck but ultimately finding driver was not negligent); *Kane v. United States*, 189 F. Supp. 2d 40, 41, 53 (S.D.N.Y. 2002) (finding government liable to plaintiff because postal worker was negligent in hitting her with truck). Because the government has not established that the offensive contact in this case was intentional, New York law does not bar the possibility of a successful negligence claim.

Thus, because I find a genuine issue of material fact regarding whether Lynch acted intentionally or negligently, I deny the defendant's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is denied.

SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:     November 22, 2019
           Brooklyn, New York